# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

MARB ("MARK") NASSER

      Debtor.

_____/

Case No. 25-44069
Chapter 13
Judge Paul R. Hage

CHONG XU,
ROSEDALE REALTY, LLC and
GRANDMONT REALTY, LLC

      Plaintiffs

v.

MARB ("MARK") NASSER

      Defendant.

_____/

Adv. Proc. No. 25-04091

## OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ADVERSARY COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6) OR IN THE ALTERNATIVE FOR A MORE DEFINITIVE STATEMENT PURSUANT TO F.R.C.P. 12(e)

## I.    Introduction

This matter is before the Court upon the *Motion to Dismiss Adversary Complaint For Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6) Or In The Alternative For A More Definitive Statement Pursuant to F.R.C.P. 12(e)* [Doc. No. 8] (the "Motion") filed by debtor Marb Nasser (the "Defendant") seeking dismissal of the *Complaint* [Doc No. 1] (the "Complaint") filed by Chong Xu, Rosedale

1

Realty, LLC and Grandmont Realty, LLC (collectively, the "Plaintiffs"). The Complaint seeks a determination that debts allegedly owed by Defendant are nondischargeable under sections 523(a)(2)(A), (a)(4) and (a)(6) of title 11 of the United States Code (the "Bankruptcy Code").[1]

The Motion seeks dismissal of the Complaint in its entirety pursuant to Civil Rule 12(b)(6), which is applicable in this adversary proceeding pursuant to Bankruptcy Rule 7012. For the reasons detailed in this Opinion, the Court grants the Motion in part, dismissing Plaintiffs' claim under section 523(a)(4) (Count II), and denies the Motion in part as it relates to Plaintiffs' claim under section 523(a)(2)(A) (Count I). Plaintiffs previously withdrew their claim under section 523(a)(6) (Count III), acknowledging that section 523(a)(6) is not applicable where, as here, the bankruptcy case is a case under chapter 13. 11 U.S.C. § 1328(a)(2) (excluding section 523(a)(6) claims from the list of claims that are non-dischargeable in chapter 13 cases).

The Court denies Defendant's request for a more definitive statement pursuant to Civil Rule 12(e) as it concludes that Plaintiffs' sole remaining claim, under section 523(a)(2)(A), is sufficiently pled.

---

[1] The Bankruptcy Code is set forth in 11 U.S.C. § 101 *et seq.* Specific chapters of the Bankruptcy Code are identified herein as "chapter __" and specific sections of the Bankruptcy Code are identified herein as "section __." Similarly, specific rules of the Federal Rules of Bankruptcy Procedure are identified herein as "Bankruptcy Rule __" and specific rules of the Federal Rules of Civil Procedure are identified herein as "Civil Rule __."

## II.     Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of debts).

## III.    Factual Background

Plaintiff Chong Xu ("Xu") alleges that he is the principal of both Grandmont Realty, LLC and Rosedale Realty, LLC, entities which allegedly own and lease out over two dozen residential properties located in the City of Detroit, Michigan. In September 2022, Defendant, through his entity Goldstone Partners, LLC, was engaged to serve as the property manager of such properties pursuant to two separate agreements, copies of which were attached to the Complaint (collectively, the "Property Management Agreements"). It appears that Defendant ceased managing Plaintiffs' properties in or around January 2025. The relationship ended poorly, with Plaintiffs asserting substantial damages due to alleged mismanagement and fraud by Defendant.

Defendant filed his chapter 13 bankruptcy petition on April 21, 2025. On May 21, 2025, Plaintiffs filed the Complaint alleging that Defendant's conduct gives rise to a nondischargeable claim in an unspecified amount pursuant to: (i) section 523(a)(2)(A) (Count I - fraud), (ii) section 523(a)(4) (Count II - defalcation while

acting in a fiduciary capacity), and (iii) section 523(a)(6) (Count III - willful and malicious injury by conversion).

In support of their section 523(a)(2)(A) claim, Plaintiffs allege that, under Article 25 of the Michigan Occupational Code, Mich. Comp. Laws § 339.2501 *et seq.* (the "<u>Michigan Occupational Code</u>"), Defendant was required to possess a license to provide property management services.[2] Plaintiffs allege that Defendant represented that he had such a license when, in fact, he did not. *See* Complaint at ¶ 17. More specifically, Plaintiffs allege that: "Defendant offered to provide Plaintiffs with property management services, expressly or implicitly representing that he and Gold Stone were qualified, experienced, and properly licensed under Michigan law to perform such duties," and that they "relied on the representations and/or omissions made by Defendant regarding Defendant's qualifications, licensing, and fiduciary responsibilities." *Id.* at ¶¶ 19, 20.

Regarding the alleged misapplication of funds, Plaintiffs assert that: "Defendant failed to provide legitimate invoices, receipts, or work orders to substantiate these massive expenditures, indicating that a significant portion of these billed expenses were fabricated or fraudulent." *Id.* at ¶ 26. Plaintiffs also allege that

---

[2] While not necessarily relevant to adjudication of the Motion, it is not clear to the Court exactly what licensing requirements may have existed in this case. At the hearing on the Motion, the Court asked Plaintiffs' counsel to direct it to specific statutory authority requiring that a party be a licensed broker in order to provide property management services. Plaintiffs' counsel was unable to provide such authority at that time.

4

Defendant paid certain nonexistent or dissolved vendors for services that were never provided. *Id.* at ¶¶ 38, 54, 55, 60.

In support of their section 523(a)(4) claim, Plaintiffs allege that the Michigan Occupational Code imposes specific legal duties on real estate brokers and their agents who engage in property management services, and that Defendant failed to comply with such duties. Specifically, Plaintiffs allege that Defendant failed to: (i) maintain property management accounts separate from his personal accounts or the accounts of other entities in violation of Mich. Comp. Laws § 339.2512c(2), and (ii) maintain and provide accurate and complete records of all funds received and disbursed in violation of Mich. Comp. Laws § 339.2512c(5). *See* Complaint at ¶ 75-76. Plaintiffs allege that:

> Defendant breached his fiduciary duties through defalcation, including misappropriating entrusted funds, failing to account for property management activities, commingling Plaintiffs' funds with his own, violating statutory obligations under Michigan law, mismanaging rental collections, failing to properly handle security deposits, and using dissolved or non-existent entities for billing purposes.

*Id.* at ¶ 77.

In the Motion, Defendant asserts that Counts I, II and III should be dismissed for failure to state a claim on which relief can be granted pursuant to Civil Rule 12(b)(6). Plaintiffs filed their *Response in Opposition to Defendant's Motion To Dismiss Pursuant to FRCP 12(b)(6)* [Doc. No. 9] (the "<u>Response</u>") on June 26,

2025.[3] Defendant filed his *Reply To Plaintiffs' Response to Defendant's Motion To Dismiss* [Doc. No. 15] (the "Reply") on July 15, 2025. The Court held oral argument on the Motion on July 21, 2025.

## IV.    Standard of Review

In deciding a Civil Rule 12(b)(6) motion, a court must (1) view a complaint in the light most favorable to the plaintiff, and (2) take all well-pled factual allegations as true. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted). A complaint must provide "more than labels and conclusions.... Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955 (2007) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "[O]nly a complaint that states a plausible claim for relief

---

[3] On June 27, 2025, Plaintiffs filed a *Notice of Errata Regarding Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss* [Doc. No. 10] which purports to correct certain errors in the Response. Specifically, the filing acknowledges that three of the cited statutory provisions in the Response, including provisions presented in block quotations, do not contain the actual statutory text but, rather, contain paraphrased language. Such language is materially different from the statutory text. Additionally, in reviewing the Response, the Court identified other examples of purportedly quoted language that appears to quote from the Complaint, but such language is not actually in the Complaint. Collectively, these errors raise questions about the veracity of the Response.

It is difficult for the Court to understand how such errors could be made. The Court is concerned that Plaintiffs may have used generative artificial intelligence to assist in drafting the Response. The Court discourages such a practice for reasons that should now be well known by all attorneys. The Court will not take any action at this time other than to warn counsel that future errors of this nature will not be tolerated.

survives a motion to dismiss." *Id.* at 679. In short, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers*, *USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 545).

Where, as in Count I, fraud is alleged, a heightened pleading standard exists pursuant to Civil Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). For affirmative misrepresentations, Civil Rule 9(b) requires a plaintiff to allege "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *McKee v. General Motors, LLC*, 376 F.Supp.3d 751, 760 (E.D. Mich. 2019) (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012)).

For claims involving fraudulent omissions, Civil Rule 9(b) requires a plaintiff to plead "'the who, what, when, where, and how' of the alleged omission." *Id.* at 760-61 (quoting *Republic Bank & Tr. Co. v. Bear Stearns Co.*, 683 F.3d 239, 256 (6th Cir. 2012)). Specifically, a plaintiff pleading a fraudulent omission must allege "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was

misleading; and (4) what [defendant] obtained as a consequence of the alleged fraud." *Id.*

## V.    Discussion

### A.    Plaintiffs' Claims Under Section 523(a)(2)(A) Are Sufficiently Pled

Section 523(a)(2)(A) excepts from discharge debts for "money, property, [or] services ... to the extent obtained, by ... false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Such debts are nondischargeable in chapter 13 cases. *See* 11 U.S.C. § 1328(a)(2).

To except a debt from discharge under section 523(a)(2)(A), a plaintiff must prove that:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Services* (*In re Rembert*), 141 F.3d 277, 280–81 (6th Cir. 1998). The standard of proof in an action under section 523(a)(2)(A) is a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654 (1991).

As noted, in properly pleading a plausible fraud claim under § 523(a), a plaintiff must, at a minimum, allege "the who, what, when, where, and how" of the alleged misrepresentation or omission. *Sanderson v. HCA-The Healthcare Co.*, 447

8

F.3d 873, 877 (6th Cir. 2006) (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

In this case, the Complaint alleges that, over a period of several years, Defendant made misrepresentations and omitted to disclose certain material information "including misrepresenting his licensure, misrepresenting the application of funds, billing for unsubstantiated or uncompleted work, concealing material facts regarding the financial operations of Plaintiffs' properties, and providing false or misleading accountings." *See* Complaint at ¶ 69. More specifically, the Complaint alleges that:

> 17.    Defendant personally misrepresented his qualifications and licensing status, personally authorized the receipt and misapplication of funds, personally engaged in concealment and self-dealing, and personally withheld accounting and documentation necessary to protect Plaintiffs' interests.

> 19.    Defendant offered to provide Plaintiffs with property management services, expressly or implicitly representing that he and Gold Stone were qualified, experienced, and properly licensed under Michigan law to perform such duties.

> 20.    Plaintiff Chong Xu personally relied on the representations and/or omissions made by Defendant regarding Defendant's qualifications, licensing, and fiduciary responsibilities.

> 26.    However, despite Plaintiffs' repeated requests, Defendant failed to provide legitimate invoices, receipts, or work orders to substantiate these massive expenditures, indicating that a significant portion of these billed expenses were fabricated or fraudulent.

> 38.    Defendant deliberately failed to maintain separate accounts, commingled Plaintiffs' funds with his own, concealed

9

financial transactions, and made it impossible for Plaintiffs to trace how entrusted monies were used.

54. Defendant routed payments for services allegedly rendered by EJ's Property Preservation LLC, an entity that had been administratively dissolved on January 12, 2024, to a personal account held by Alma Rodriguez, the wife of Jose Rodriguez, without providing invoices or disclosing this arrangement.

55. Defendant also used a contractor operating under the name "Wilson Carpentry" or "Wilson carpenter," which appears to a be a non-existent legal entity based on searches of Michigan's corporate database. Invoices from this purported entity contained suspicious inconsistencies and could not be verified online, suggesting the use of a fake company for billing purposes.

60. Defendant also made false statements regarding tenant payment statuses to Plaintiffs' attorney, contradicting his own records and tenant communications.

67. To induce Plaintiffs to enter into the property management agreements and to entrust Defendant with substantial funds, Defendant falsely assured Plaintiffs, either expressly or through material omission, that he and Gold Stone were qualified, experienced, and in full compliance with all Michigan licensing laws applicable to property management.

68. Plaintiffs reasonably relied upon Defendant's false assurances regarding his and Gold Stone Partners' licensed status and legal authority to act as property managers when deciding to engage their services and transfer significant funds, resulting in direct financial harm to Plaintiffs.

Complaint at ¶¶ 17, 19, 20, 26, 38, 54, 55, 60, 67, 68.

The detail contained in these allegations is less than fulsome. Nevertheless, the Court concludes that the above-referenced paragraphs, in addition to the more general fraud allegations such as those in paragraph 69, provide the requisite "who,

10

what, when, where, and how" to put Defendant on notice of the nature of the fraudulent scheme that Plaintiffs allege existed over a period of multiple years and, therefore, satisfy the heightened requirements of Civil Rule 9(b). *See Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) ("Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim.").

Specifically, the Complaint alleges that Defendant misrepresented his licensure status or omitted to disclose that he did not have a required license and that Plaintiffs relied upon such misrepresentation or omission. *Id.* at ¶¶ 17, 19, 20, 67, 68. The Complaint also alleges that Defendant misrepresented and concealed financial information, provided falsified financial records, and paid vendors (*e.g.*, EJ Property Preservation, LLC and Wilson Carpentry) who did not exist or who were dissolved. *Id.* at ¶¶ 26, 38, 54, 55, 60. The Complaint alleges that Defendant's misconduct was "systematic, calculated, and sustained throughout the management relationship." *Id.* at ¶ 34. Plaintiffs allege that, because of this conduct, they were harmed financially. *Id.* at ¶ 3, 5, 21, 65, 71.

Based on the foregoing, the Court finds that the Complaint's allegations are sufficient to state a claim for fraud that survives a motion under Civil Rule 12(b)(6). As a result, the Motion is denied as to Count I.

## B.    Plaintiff Xu Has Standing To Bring A Section 523(a)(2)(A) Claim

Separately, Defendant argues that this Court should dismiss Plaintiff Xu because "beyond the fact that he owns the plaintiff entities, there are no allegations which would establish that he is personally damaged in his individual capacity." *See* Motion at p. 15.

Contrary to Defendant's assertions, Plaintiffs specifically allege in the Complaint that:

> 20.    Plaintiff Chong Xu personally relied on the representations and/or omissions made by Defendant regarding Defendant's qualifications, licensing, and fiduciary responsibilities.
>
> 21.    In reliance on Defendant's false pretenses, Plaintiff Xu personally advanced substantial funds intended for the management, maintenance, and repair of the properties owned by Plaintiffs, Rosedale and Grandmont, and caused those entities to enter into the Property Management Agreements. Defendant's fraudulent conduct caused direct financial harm to Plaintiff Xu individually, as well as to Rosedale and Grandmont.

Complaint at ¶¶ 20, 21. These paragraphs allege personal harm to Xu in his individual capacity, not merely in his capacity as an owner of Rosedale Realty, LLC and Grandmont Realty, LLC.

This Court must view the Complaint in the light most favorable to the Plaintiffs and take all well pled factual allegations as true. *See, e.g.*, *Gunasekera*, 551 F.3d at 466. Plaintiffs have sufficiently alleged that Xu was personally harmed

because of Defendant's alleged fraudulent conduct. Thus, the Court denies the Motion as it relates to the dismissal of Xu.

### C. Plaintiffs Have Failed To State A Claim Under Section 523(a)(4)

Section 523(a)(4) excepts debts from discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny...." 11 U.S.C. § 523(a)(4). Plaintiffs did not allege embezzlement or larceny, instead focusing solely on fraud or defalcation in a fiduciary capacity.

The exception from discharge for defalcation while acting in a fiduciary capacity "follows from Congress's desire to protect trust relationships: when the bankrupt is a trustee and the creditor a trust beneficiary, § 523(a)(4) points the needle away from discharge; it is yet another example of the law's imposition of high standards of loyalty and care on trustees." *Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963, 967 (6th Cir. 2009) (citing *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 391 (6th Cir. 2005)).

"A debt is non-dischargeable as the result of defalcation when a preponderance of the evidence establishes: (1) a pre-existing fiduciary relationship, (2) a breach of that relationship, and (3) resulting loss." *In re Patel*, 565 F.3d at 968 (citing *Bd. Of Trustees v. Bucci (In re Bucci)*, 493 F.3d 635, 642 (6th Cir. 2007)). Relying on the United States Supreme Court's holding in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 331, 55 S.Ct. 151 (1934), the Sixth Circuit Court of Appeals "has

repeatedly construed the term 'fiduciary capacity' found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances." *In re Bucci*, 493 F.3d at 642. The term "does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship." *Id.* at 639 (citing *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178 (6th Cir.1997)). Rather, the defalcation provision applies to "only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Id.* at 640.[4]

Based on the foregoing, the law in the Sixth Circuit is clear that, to establish the existence of an express or technical trust for purposes of section 523(a)(4), a creditor must prove that a contract or statute contains or evidences: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *In re Patel*, 565 F.3d at 968 (quoting *In re Blazak*, 397 F.3d at 391-92). Although the determination of whether a fiduciary relationship for purposes of section 523(a)(4) exists is a matter of federal law, the creation of a trust is a matter of state law. *Digital Commerce, Ltd. v. Sullivan (In re Sullivan)*, 305 B.R. 809, 825 (Bankr. W.D. Mich. 2004) (citing *Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate*

---

[4] The Sixth Circuit's narrow construction of the defalcation provision is consistent with the general rule that exceptions to discharge in section 523(a) must be narrowly construed. *See Meyers v. IRS (In re Meyers)*, 196 F.3d 622, 624 (6th Cir. 1999); *XL Datacomp, Inc. v. Wilson (In re Omegas Grp., Inc.)*, 16 F.3d 1443, 1452 (6th Cir. 1994).

*Agency, Inc.)*, 760 F.2d 121, 124 (6th Cir. 1985)). "Without an existing, express or technical trust recognized under state law, there can be no non-dischargeable debt under § 523(a)(4)." *Nullaballi v. Achanta (In re Achanta)*, 583 B.R. 123, 126 (Bankr. E.D. Mich. 2018).

Under Michigan law, the creation of a trust does not require any particular form of words. *Nash v. Duncan Park Comm'n*, 304 Mich. App. 599, 848 N.W.2d 435, 447 (Mich. Ct. App. 2014) (citing *Brooks v. Gillow*, 352 Mich. 189, 89 N.W.2d 457, 462 (1958)). However, it does require "'an explicit declaration of trust, accompanied by a transfer of property to one for the benefit of another.'" *In re Young*, 468 B.R. 818, 826 (Bankr. E.D. Mich. 2012) (quoting *Osius v. Dingell*, 375 Mich. 605, 134 N.W.2d 657, 660 (1965)).

As noted, Plaintiffs do not allege that a trust was created by virtue of a contractual trust agreement. Rather, they allege that Defendant was subject to the Michigan Occupational Code by virtue of his agreement to serve as a property manager and that the following provisions of that statute impose a technical trust with respect to funds held by a property manager:

> (2) A real estate broker who engages in property management shall maintain property management accounts separate from all other accounts. Except as provided in this section, a property management account shall be managed in accordance with the property management employment contract.

***

(5) A person who engages in property management shall maintain records of funds deposited and withdrawn from property management accounts. Property management account records shall indicate the date of the transaction, from whom the money was received or to whom it was given, and other pertinent information concerning the transaction the property management employment contract may require.

Mich. Comp. Laws § 339.2512(c). Plaintiffs argue that these provisions "create a technical trust over every dollar collected as rent or provided for property expenses." Response at p. 20.

While the case law makes clear that a statute may create a trust for purposes of section 523(a)(4), consistent with the Circuit's narrow interpretation of that section, *Peoples Bank & Trust Co. of Hazard v. Penick (In re Penick)*, 149 F.3d 1184, *3 (6th Cir. 1998) ("We have employed a narrow exception for defalcation while acting in a fiduciary capacity"), courts have done so sparingly.

Courts have, for example, held that the Michigan Builders Trust Fund Act, Mich. Comp. Laws § 570.151 *et seq.*, creates a trust in favor of laborers, subcontractors, or material suppliers who perform labor or furnish material for a specific construction project that is sufficient to trigger the discharge exception in section 523(a)(4). *See, e.g.*, *In re Patel*, 565 F.3d at 968-969; *Carlisle Cashway, Inc., v. Johnson (In re Johnson)*, 691 F.2d 249, 252 (6th Cir. 1982); *Miller v. Safford (In re Safford)*, 2021 WL 5509246 (Bankr. E.D. Mich. Nov. 23, 2021); *Sangal v. Strickfaden (In re Strickfaden)*, 421 B.R. 802 (Bankr. E.D. Mich. 2009), *aff'd*, 2010 WL 3583427 (E.D. Mich. Sept. 9, 2010). That statute provides, in pertinent part:

16

In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor *shall be considered by this act to be a trust fund*, *for the benefit of the person making the payment, contractors, laborers, subcontractors, or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him* for building construction purposes.

Mich. Comp. Laws § 570.151 (emphasis added). The statute unambiguously designates a building contract fund as "a trust fund," identifies a specified set of beneficiaries ("the person making the payment, contractors, laborers, subcontractors, or materialman") with respect to a trust res ("all funds so paid to him") and designates the contractor or subcontractor as a "trustee."

Courts have also found an express or technical trust for purposes of section 523(a)(4) in the statutory text of:

(i)  the Michigan Insurance Code of 1956, Mich. Comp. Laws § 500.1207(1) ("An agent shall be a fiduciary for all money received or held by the agent in his or her capacity as an agent. Failure by an agent in a timely manner to turn over the money which he or she holds in a fiduciary capacity to the persons to whom they are owed is prima facie evidence of violation of the agent's fiduciary responsibility."), *see In re Interstate Agency, Inc.*, 760 F.2d at 124, and

(ii)  the Michigan Estates and Protected Individuals Code, Mich. Comp. Laws § 700.5419(1) ("Appointment of a conservator vests in the conservator, title as trustee to all of the protected individual's property."), *see Knowlen v. Mapes (In re Mapes)*, 2009 WL 4723262 (Bankr. W.D. Mich. 2009).

As the foregoing examples demonstrate, the Michigan legislature knows how to create an express or technical trust in a statute when it wants to. Contrast the

17

statutory language in the aforementioned statutes with the language utilized in the

Michigan Occupational Code. That statute imposes duties on a real estate broker[5]

who engages in property management, including:

(i)    the duty to "maintain property management accounts separate from all other accounts" and to manage such accounts "in accordance with the property management employment contract," Mich. Comp. Laws § 339.2512c(2),

(ii)    the duty to "maintain records of funds deposited and withdrawn from property management accounts" as "the property management employment contract may require." Mich. Comp. Laws § 339.2512c(5), and

(iii)    the duty to "render an accounting to his or her property management client and remit all money strictly in accordance with the property management employment contract." Mich. Comp. Laws § 339.2512c(6).[6]

The Court concludes that these provisions do not establish an express or

technical trust with respect to funds held by a real estate broker who engages in

property management. To be sure, the referenced provisions impose duties. But they

do not evidence an intent to create a trust, much less contain an "explicit declaration

---

[5] Of course, Count I of the Complaint is based, in part, on Plaintiffs' assertion that Defendant is not, in fact, a licensed real estate broker. To the extent that Defendant is not a licensed real estate broker, Defendant arguably is not subject to Mich. Comp. Laws § 339.2512c at all. *See, e.g.*, *S-S, LLC v. Merten Bldg. Ltd. P'ship*, 2010 WL 2679524, *8 (Mich. App. Nov. 18, 2010) (MCL 339.2512c deemed inapplicable where property manager did not have a property management employment contract, as contemplated in statute).

[6] In Count II of the Complaint and in the Response, Plaintiffs focused solely on subsections (2) and (5) of Mich. Comp. Laws § 339.2512c for purposes of establishing an express or technical trust. However, subsection (6) of that statute was referenced earlier in the Complaint. Therefore, the Court also considered the impact of that provision in reaching its conclusion.

of trust" like the declaration contained in the Michigan Builders Trust Fund Act. *See Osius v. Dingell*, 375 Mich. at 613 ("It is a general principle of trust law that a trust is created only if the settlor manifests an intention to create a trust, and it is essential that there be an explicit declaration of trust accompanied by a transfer of property to one for the benefit of another."). The statute also does not identify a definite beneficiary of the "funds deposited and withdrawn from property management accounts."

Rather, in all three of the aforementioned statutory provisions, the statute expressly defers to a separate contractual agreement between parties, the "property management employment contract," that would delineate their respective, specific rights and obligations. In this case, the Property Management Agreements could easily have formalized a trust relationship. However, Plaintiffs have not suggested in the Complaint or in their Response that any provisions of such agreements do so; rather they have alleged that it is the statute alone that creates the trust. *See* Response at p. 17, 19-21. In the absence of language in the statute clearly establishing an express or technical trust,[7] no such trust exists. *See Siu Reis v. Terrell (In re Terrell)*, 2018 WL 2138260, at *3 (Bankr. E.D. Mich. May 8, 2018) (dismissing a section

---

[7] Notably, the Property Management Agreements do not contain language evidencing an intent to create a trust. Rather, the "RELATIONSHIP OF PARTIES" section of such agreements merely provides that: "It is understood by the Parties that Manager is an independent contractor with respect to the relationship between the Parties, and not an employee of the Owner." *See* Property Management Agreements, ¶ 1.6.

523(a)(4) claim against a licensed real estate broker who was serving as a property manager, concluding: "Because a trust was not created, no fiduciary relationship can exist for purposes of section 523(a)(4)….").

The Court accepts that the Michigan Occupational Code and/or the common law may well have created a fiduciary relationship between Defendant and Plaintiffs. However, as noted, federal law dictates whether a fiduciary relationship exists for the purposes of section 523(a)(4) and "[t]he mere fact that state law places two parties in a relationship that may have some of the characteristics of a fiduciary relationship does not necessarily mean that the relationship is a fiduciary relationship under § 523(a)(4)." *See Abdel–Hak v. Saad (In re Saad)*, 319 B.R. 147, 155 (Bankr. E.D. Mich. 2004) (concluding that the debtor, a real estate agent, "may have breached fiduciary obligations created by Michigan law…. However, those facts alone do not create a non-dischargeable debt" under section 523(a)(4)); *In re Blaszak*, 397 F.3d at 390 ("the mere failure to meet an obligation while acting in a fiduciary capacity does not rise to the level of defalcation; an express or technical trust must also be present").

The Court concludes that the cited provisions of the Michigan Occupational Code do not establish an express or technical trust. Because no such trust was created, no fiduciary relationship can exist for purposes of section 523(a)(4). As a result, Count II is appropriately dismissed pursuant to Civil Rule 12(b)(6).

### D. Plaintiffs Have Withdrawn Their Claim Under Section 523(a)(6)

In the Response, Plaintiffs state that they "voluntarily withdraw [their claim under Count III] without prejudice should the case be converted to Chapter 7." Response at p. 24. Plaintiffs' counsel confirmed this withdrawal on the record at the hearing on the Motion, conceding that section 523(a)(6) is inapplicable in cases under chapter 13 because such claims are not included in the list of section 523 discharge exceptions set forth in section 1328. *See* 11 U.S.C. § 1328(a)(2). This Court will therefore consider Count III withdrawn without prejudice to Plaintiffs' rights in the event this case is converted to a case under chapter 7.

### E. Relief Under Civil Rule 12(e) Is Not Warranted

As an alternative to dismissal, Defendant requests in the Motion that the Court order Plaintiffs to provide a more definitive statement with respect to their fraud claim (Claim I) under Civil Rule 12(e).

Civil Rule 12(e), which applies in this adversary proceeding through Bankruptcy Rule 7012, states in pertinent part that:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

Motions for a more definite statement under Civil Rule 12(e) are generally disfavored in the federal courts. *See, e.g.*, *Gold v. Winget (In re NM Holdings Co.,*

*LLC)*, 407 B.R. 232, 242–43 (Bankr. E.D. Mich. 2009). In *In re European Rail Pass Antitrust Litigation*, 166 F.Supp.2d 836, 844 (S.D.N.Y. 2001) (citations omitted), the court explained:

> [I]t is well settled that such motions "generally are disfavored because of their dilatory effect." It "is designed to strike at unintelligibility rather than want of detail and ... allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement." As this Court has previously explained, "[a] motion pursuant to Rule 12(e) should not be granted 'unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.'"

*See also Cooper Ins. Agency Ctr. v. Mourer–Foster, Inc.*, 2005 WL 3289345, at *1 (W.D. Mich. Dec. 5, 2005) ("Rule 12(e) motions are disfavored by most courts and are rarely granted") (citations omitted); *Green v. Begley Co.*, 2008 WL 4449065, at *4 (S.D. Ohio Sept. 29, 2008) (same); *In re Berkley*, 2025 WL 1426617 (Bankr. N.D. Ohio May 15, 2025) ("Rule 12(e) motions are generally disfavored because of their dilatory nature.") (citations omitted).

As set forth above, Plaintiffs in this case sufficiently pled their claim under section 523(a)(2)(A). Defendant can reasonably be expected to respond to the allegations in Count I. While the surviving claim is somewhat lacking in detail, it is not unintelligible. The contours of such claim can and undoubtedly will be clarified through discovery. Therefore, Defendant's request for a more definite statement pursuant to Civil Rule 12(e) is denied.

## VI.    Conclusion

For the reasons stated herein, the Court grants the Motion in part and denies it in part. The Court concludes that Count I of the Complaint, alleging fraud under section 523(a)(2)(A), was sufficiently pled to survive a motion under Civil Rule 12(b)(6). The remaining counts of the Complaint will be dismissed. The Court will enter a separate order consistent with this Opinion.

**Signed on August 15, 2025**



/s/ Paul R. Hage

**Paul R. Hage**
**United States Bankruptcy Judge**