**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

MARB ("MARK") NASSER            Case No. 25-44069
                                               Chapter 13
                                               Judge Paul R. Hage

       Debtor.
_____/

CHONG XU,                              Adv. Proc. No. 25-04091
ROSEDALE REALTY, LLC and
GRANDMONT REALTY, LLC

           Plaintiffs
v.

MARB ("MARK") NASSER

           Defendant.
_____/

### OPINION GRANTING MOTION FOR RECONSIDERATION

## I. INTRODUCTION

This matter is before the Court on the *Motion for Reconsideration of the August 15, 2025 Opinion Dismissing Count II (523(a)(4)) E.D. Mich. LBR 9024-1(a)(3)* [Doc. No. 17] (the "<u>Motion for Reconsideration</u>") filed by Chong Xu, Rosedale Realty, LLC and Grandmont Realty, LLC (collectively, the "<u>Plaintiffs</u>"). The Motion for Reconsideration asks this Court to reconsider a portion of its August 15, 2025 *Order Granting In Part and Denying In Part Defendant's Motion to*

1

*Dismiss Adversary Complaint for Failure to State a Claim Pursuant to F.R.C.P.*
*12(b)(6) Or In The Alternative For A More Definitive Statement Pursuant to F.R.C.P.*
*12(e)* [Doc. No. 18] (the "<u>Order</u>") wherein the Court dismissed Count II (section
523(a)(4) – defalcation while acting in a fiduciary capacity) of Plaintiffs' *Complaint*
[Doc. No. 1] (the "<u>Complaint</u>") against debtor Marb Nasser (the "<u>Defendant</u>"),
asserting that the Court made a clear error of law in reaching its decision to dismiss
such claim.

The Court does not believe that it made a *clear* error of law. Indeed, the law
dealing with the issue of what is required for finding an express or technical trust in
the context of a claim under section 523(a)(4) of title 11 of the United States Code[1]
is less than clear. The relevant case law, of which there is much, reaches conflicting
results on similar facts and many of the cases are difficult to reconcile with one
another. But aided with more fulsome briefing on the issue, and having itself
conducted further research, the Court concludes that it was an error to dismiss Count
II of the Complaint at this early stage of the litigation. Plaintiffs have sufficiently
alleged that the relevant provision of the Michigan Occupational Code, Mich. Comp.
Laws § 339.2512c, when read in combination with the property management

---

[1] The Bankruptcy Code is set forth in 11 U.S.C. § 101 *et seq.* Specific chapters of the Bankruptcy Code are identified herein as "chapter __" and specific sections of the Bankruptcy Code are identified herein as "section __." Similarly, specific rules of the Federal Rules of Civil Procedure are identified herein as "Civil Rule __."

agreements entered into between the parties (the "<u>Property Management</u> <u>Agreements</u>"), establishes a technical trust sufficient for their section 523(a)(4) claim to survive a motion to dismiss under Civil Rule 12(b)(6).

The Court reaches this conclusion based on its determination that a technical trust can be established where a statute and/or the parties' contractual agreements contemplate one party holding legal title to a specific res for the benefit of defined beneficiaries where trust-like duties (specifically, a prohibition on commingling, reporting requirements, and a lack of discretion with respect to the use of funds) are imposed prior to the occurrence of a breach. Because it has been sufficiently alleged that such requirements are met here, the Court will grant the Motion for Reconsideration and reinstate Count II of the Complaint.

## II.     FACTUAL BACKGROUND

Plaintiffs allege that they own and lease out over two dozen residential properties located in the City of Detroit, Michigan. In September 2022, Defendant, through his entity Goldstone Partners, LLC, was engaged to serve as the property manager of such properties pursuant to the Property Management Agreements. Plaintiffs have alleged that they were damaged because of mismanagement and fraud by Defendant with respect to his management of the properties.

Defendant filed his chapter 13 bankruptcy petition on April 21, 2025. On May 21, 2025, Plaintiffs filed the Complaint alleging that Defendant's conduct gives rise

to a nondischargeable claim in an unspecified amount pursuant to: (i) section 523(a)(2)(A) (Count I - fraud), (ii) section 523(a)(4) (Count II - defalcation while acting in a fiduciary capacity), and (iii) section 523(a)(6) (Count III - willful and malicious injury by conversion).

In support of their section 523(a)(4) claim, Plaintiffs allege that Defendant was subject to the Michigan Occupational Code[2] which they allege imposes specific legal duties on real estate brokers and their agents who engage in property management services. Plaintiffs allege that Defendant failed to comply with such duties. Specifically, Plaintiffs allege that Defendant failed to: (i) maintain property management accounts separate from his personal accounts or the accounts of other entities in violation of Mich. Comp. Laws § 339.2512c(2), and (ii) maintain and provide accurate and complete records of all funds received and disbursed in violation of Mich. Comp. Laws § 339.2512c(5). *See* Complaint at ¶ 75-76. Plaintiffs alleged that:

> Defendant breached his fiduciary duties through defalcation, including misappropriating entrusted funds, failing to account for property management activities, commingling Plaintiffs' funds with his own, violating statutory obligations under Michigan law, mismanaging rental collections, failing to properly handle security deposits, and using dissolved or non-existent entities for billing purposes.

---

[2] The Court makes no finding at this early stage of the litigation regarding whether Defendant was, in fact, subject to the requirements of the Michigan Occupational Code as such issue has not yet been sufficiently briefed by the parties.

4

*Id.* at ¶ 77.

Defendant filed a *Motion to Dismiss Adversary Complaint For Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6) Or In The Alternative For A More Definitive Statement Pursuant to F.R.C.P. 12(e)* [Doc. No. 8] (the "Motion") asserting that Counts I, II and III of the Complaint should be dismissed for failure to state a claim on which relief can be granted pursuant to Civil Rule 12(b)(6). As it relates to Count II, Defendant disputed that the Michigan Occupational Code created an "express or technical trust" and, therefore, no non-dischargeable debt arose under section 523(a)(4).

Plaintiffs filed their *Response in Opposition to Defendant's Motion To Dismiss Pursuant to FRCP 12(b)(6)* [Doc. No. 9] (the "Response") on June 26, 2025.[3] Defendant filed a *Reply To Plaintiffs' Response to Defendant's Motion To Dismiss* [Doc. No. 15] on July 15, 2025. The Court held oral argument on the Motion to Dismiss on July 21, 2025.

On August 15, 2025, the Court entered its *Opinion Granting In Part and Denying In Part Defendant's Motion to Dismiss Adversary Complaint for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6) Or In The Alternative For A More Definitive Statement Pursuant to F.R.C.P. 12(e)* [Doc. No. 17] (the "Opinion") and

---

[3] On June 27, 2025, Plaintiffs filed a *Notice of Errata Regarding Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss* [Doc. No. 10] which purports to correct certain errors in the Response.

the corresponding Order. The Opinion and Order dismissed Counts II and III of the Complaint and denied the Motion as it relates Count I.

On August 29, 2025, Plaintiffs filed the Motion for Reconsideration seeking reconsideration with respect to the dismissal of Count II. Upon review of the Motion for Reconsideration, the Court entered an *Order Regarding Plaintiffs' Motion for Reconsideration* [Doc. No. 22] permitting, but not requiring, Defendant to file a brief in response to the Motion for Reconsideration. Defendant filed his *Response to Plaintiffs' Motion for Reconsideration* [Doc. No. 25] on September 22, 2025. The Court has carefully considered the briefing by both parties and has conducted its own additional research on the issues presented.

## III.    DISCUSSION

### A. Legal Standard

Local Bankruptcy Rule 9024–1(a)(3) sets forth the legal standard to apply with respect to a motion for reconsideration. That local rule provides:

> **Grounds.** Generally, and without restricting the discretion of the court, a motion for reconsideration that merely presents the same issues ruled upon by the court, either expressly or by reasonable implication, will not be granted. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

L.B.R. 9024-1(a)(3). The plain language of the local bankruptcy rule makes clear that courts have unrestricted discretion to reconsider their prior orders. *See also* Fed.

R. Civ. P. 60(b)(6) (stating that a court may relieve a party from an order for "any other reason that justifies relief").

**B. Analysis**

Section 523(a)(4) excepts debts from discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny...." 11 U.S.C. § 523(a)(4). Plaintiffs did not allege embezzlement or larceny, instead focusing solely on fraud or defalcation in a fiduciary capacity. Exceptions to discharge are strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998); *In re Livingston*, 372 Fed. Appx. 613, 618 (6th Cir. 2010).

"A debt is non-dischargeable as the result of defalcation when a preponderance of the evidence establishes: (1) a pre-existing fiduciary relationship, (2) a breach of that relationship, and (3) resulting loss." *Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963, 968 (6th Cir. 2009) (citing *Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 642 (6th Cir. 2007)).

The Sixth Circuit has repeatedly noted that it construes the term "fiduciary capacity" more narrowly than the term is used in other circumstances. *In re Bucci*, 493 F.3d at 642. The term "does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship." *Id.* at 639. Rather, the

7

defalcation provision applies to "only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *R.E. America, Inc. v. Garver (In re Garver),* 116 F.3d 176, 180 (6th Cir.1997).

The Complaint did not specify what type of trust Plaintiffs were relying on for purposes of section 523(a)(4), rather it merely stated: "Defendant acted in a fiduciary capacity in managing Plaintiffs' properties and funds, which were held in trust or otherwise entrusted to Defendant's care for Plaintiff's benefit." *See* Complaint at ¶ 74. The Complaint then cited to the following provisions of the Michigan Occupational Code:

> (2) A real estate broker who engages in property management shall maintain property management accounts separate from all other accounts. Except as provided in this section, a property management account shall be managed in accordance with the property management employment contract.
>
> &#42;&#42;&#42;
>
> (5) A person who engages in property management shall maintain records of funds deposited and withdrawn from property management accounts. Property management account records shall indicate the date of the transaction, from whom the money was received or to whom it was given, and other pertinent information concerning the transaction the property management employment contract may require.

Mich. Comp. Laws § 339.2512c. Although not addressed by Plaintiffs in their initial briefing, all now seem to agree that subsection (6) of this statute is also relevant to this dispute:

8

(6) A real estate broker engaged in property management shall render an accounting to his or her property management client and remit all money strictly in accordance with the property management employment contract.

*Id.*

In the Response, Plaintiffs continued to be vague about what type of trust they believed existed.[4] While they clearly relied on the statute and not the parties' contractual agreements for the creation of a trust, there were allegations in the Response regarding the existence of:

(i)     a technical express trust ("as a property manager entrusted with client funds under Michigan law, was operating in a fiduciary capacity defined by statute, which created a *technical, express trust* over those funds"),

(ii)    an express or technical trust ("the instant case involves specific funds entrusted to the Debtor under circumstances that, by operation of Michigan statute, create a clear and undeniable *express or technical trust*"), and

(iii)   an express statutory trust ("Plaintiffs have pleaded the existence of an *express statutory trust*").

*See* Response at pp. 18, 19 and 21 (emphasis added). Plaintiffs are now apparently focusing exclusively on a statutory/technical trust argument, *see* Motion for Reconsideration at p. 1, and are no longer asserting that any sort of an express trust exists.

---

[4] This is understandable as the case law frequently uses terms like express trust, technical trust, statutory trust and others somewhat interchangeably and inconsistently.

9

The question, therefore, is whether the Court erred in dismissing Count II under Civil Rule 12(b)(6) because the above-referenced statutory provisions are insufficient to establish a technical trust. The parties appear to agree that, in the Sixth Circuit, a creditor must demonstrate the following to establish the existence of a trust for purposes of section 523(a)(4): "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *In re Patel*, 565 F.3d at 968. This is the test that was applied by the Court in the Opinion.

In the Motion for Reconsideration, the Plaintiffs assert that the Court required an "explicit declaration of trust" drawn from private express-trust doctrine. This argument is misplaced. Although the Court cited the state law requirements for establishing an express trust (because of Plaintiffs' repeated references to an express trust in its pleadings, as noted above), the Opinion's finding that a trust was not created in this case was based on its conclusion that the Michigan Occupational Code failed to meet two of the requirements set forth by the Sixth Circuit, specifically: (i) its failure to evidence an intent to create a trust, and (ii) its failure to identify a definite beneficiary of the "funds deposited and withdrawn from property management accounts." *See* Opinion at pp. 18-19. The Court revisits those conclusions below.

**(i)      Intent to Create a Trust**

The first requirement of the Sixth Circuit's test is that a statute or a contract between the parties must evidence an intent to create a trust. The Court has struggled to find clear guidance in the case law regarding exactly what type of language is required to satisfy this requirement. Several courts (including multiple circuit courts of appeal) have addressed this issue and have reached seemingly different results based on similar statutes, agreements and fact patterns.[5]

The Court agrees with the conclusion of most courts that the creation of a trust does not require any particular form of words. *See, e.g.*, *Nash v. Duncan Park Comm'n*, 304 Mich. App. 599, 848 N.W.2d 435, 447 (Mich. Ct. App. 2014). Nevertheless, in reviewing the case law, the Court is struck by the fact that, in nearly every published opinion where a trust was found for purposes of section 523(a)(4), the statutory text and/or a contract between the parties used the word "trust" or "trustee." Unlike the other Michigan statutes surveyed by the Court in the Opinion (*i.e.* the Michigan Builders Trust Fund Act, Mich. Comp. Laws § 570.151, the

---

[5] As one court stated over 25 years ago:

> It is an understatement to say that the courts are divided on the meaning of "fiduciary capacity" for purposes of nondischargeability of debts for fraud or defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4). Opinions are split as to attorneys, corporate directors, officers and shareholders, general partners, limited partners, and joint venturers, property managers, insurance agents, lottery agents and contractors, subcontractors and homebuilders.

*Spinoso v. Heilman (In re Heilman)*, 241 B.R. 137, 152-55 (Bankr. D. Md. 1999) (internal citations omitted).

Michigan Insurance Code of 1956, Mich. Comp. Laws § 500.1207(1), and the Michigan Estates and Protected Individuals Code, Mich. Comp. Laws § 700.5419(1)), the Michigan Occupational Code never uses the words "trust" or "trustee." Arguably, if the Michigan legislature desired to create a trust relationship (and not just a principal-agent relationship) between a property owner and a property manager under the Michigan Occupational Code, it could and would have used those words in the statute.

The Property Management Agreements likewise never use the words "trust" or "trustee." In fact, they refer to the relationship between the parties as that of an "independent contractor" and an "agent." *See* Property Management Agreement at § 1.3. If the parties desired to clearly evidence their intent that their relationship be a trust relationship, then such language should have been included in such agreements. To the extent that the Property Management Agreements are ambiguous in this regard, the Court could construe such agreements against the Plaintiffs, *see Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.,* 525 F.3d 409, 424 n. 5 (6th Cir. 2008) (if contractual language is subject to more than one interpretation, "ambiguities are construed against the drafter of the language"), who it is acknowledged were the drafters of such agreements. *See* Property Management Agreements at p. 6 ("This Agreement was prepared by counsel for Owner.").

In the absence of clear and unambiguous statutory or contractual language evidencing an intent to create a trust, the Court looks to the case law for guidance. Neither of the parties have directed the Court to any authority discussing whether the Michigan Occupational Code creates a technical trust in favor of a property owner. Nor has the Court been able to locate such authority. This appears to be an issue of first impression.

In *Siu Reis v. Terrell (In re Terrell)*, 2018 WL 2138260, at *3 (Bankr. E.D. Mich. May 8, 2018), Judge Randon was faced with a similar fact pattern. A remote property owner hired a property manager to manage residential properties in Detroit. After the parties' business relationship soured, the property owner terminated the debtor as her agent and filed suit. The debtor filed a bankruptcy case and the property owner commenced a non-dischargeability action alleging that the debt owed to her by the property manager was non-dischargeable under section 523(a)(4) because the debtor "used her funds for unauthorized purposes and failed to provide an accounting." *Id.* at *2.

The court acknowledged that, "Under Michigan law, a real estate broker has a fiduciary relationship with his principal." *Id.* at *3. Nevertheless, noting the Sixth Circuit's heightened trust requirement for non-dischargeability under section 523(a)(4), the court dismissed the claim stating: "Because a trust was not created, no fiduciary relationship can exist for purposes of section 523(a)(4)." *Id.* The court's

written opinion did not contain an analysis of the text of the Michigan Occupational Code though, and it is unclear whether that statute was even raised by the parties.

The only authority that the Court could locate addressing whether debts governed by the Michigan Occupational Code are nondischargeable is Judge Shefferly's opinion in *Abdel-Hak v. Saad (In re Saad)*, 319 B.R. 147 (Bankr. E.D. Mich. 2004). In that case, the court held that a trust was not created under the statute, albeit in a different context. There, a real estate agent and a buyer agreed that a fiduciary relationship existed between the two of them under Michigan law, and the court accepted that conclusion. The *Saad* court acknowledged that the Michigan Occupational Code imposes several duties on a real estate agent to a potential buyer of property. Nevertheless, the court held that a trust relationship was not established for purposes of creating a non-dischargeable debt under section 523(a)(4), stating:

> Although not briefed by the parties, the Court accepts the proposition of law advanced by Abdel–Hak that the buyer/agent relationship itself creates a fiduciary relationship under Michigan law for certain purposes. However, that is not the test for determining whether a fiduciary relationship exists for purposes of determining the non-dischargeability of a debt alleged to exist under § 523(a)(4) of the Bankruptcy Code. The mere fact that state law places two parties in a relationship that may have some of the characteristics of a fiduciary relationship does not necessarily mean that the relationship is a fiduciary relationship under § 523(a)(4)….

*Id.* at 155.

Ultimately, the *In re Saad* court found that "the narrower interpretation given to 'fiduciary capacity' by the Sixth Circuit" was not met because "there was no trust

res, nor any express trust created." *Id.* at 156. While the defendant "may have breached contractual obligations that he had to [the debtor], and indeed may have breached fiduciary obligations created by Michigan law," the court held, "those facts alone do not create a non-dischargeable debt under § 523(a)(4)." *Id.* But, again, *In re Saad* does not answer the question because that opinion addressed a different relationship governed by the Michigan Occupational Code (a real estate agent/buyer relationship) than the relationship at issue in this case (a property manager/property owner relationship).

A series of opinions by the Sixth Circuit Court of Appeals is helpful for purposes of determining what is required to evidence an intent to create a trust for purposes of section 523(a)(4). First, in *In re Interstate Agency, Inc.*, 760 F.2d at 121, the court found that a trust relationship existed for purposes of section 523(a)(4) between an insurance company and an insurance broker who was vested with the authority to accept premiums for policies underwritten by the insurance company. Unlike in the present case, the contractual agreement between the parties in that case characterized the broker as a trustee, providing:

> The Agent shall collect, receive and receipt for premiums on Insurance tendered by an Agent to and accepted by the Company; and to retain out of the premiums so collected, as sole and full compensation on business so placed with the Company, commissions at ... [a scheduled] rate....
>
> *It is understood that all premiums received by the Agent shall be held by him as trustee for the Company until delivered to it*; and the privilege

of retaining commissions shall not be construed as changing that relationship....

*Id.* at 123 (emphasis in original).

After referencing the foregoing, the Sixth Circuit found that the language of the Michigan Insurance Code itself "clearly establishe[d] an express trust fiduciary relationship" for purposes of section 523(a)(4) based on the following language:

> An agent shall be a fiduciary for all money received or held by the agent in his or her capacity as an agent. Failure by an agent in a timely manner to turn over the money which he or she holds in a fiduciary capacity to the persons to whom they are owed is prima facie evidence of violation of the agent's fiduciary responsibility.

*Id.* at 124 (citing Mich. Comp. Laws Ann. § 500.1207(1)).[6]

In *In re Garver*, 116 F.3d at 178, the Sixth Circuit drew guidance from *In re Interstate Agency, Inc.* and explicitly considered "the nature of the fiduciary relationship required under the defalcation provision of § 523(a)(4)." Although the parties there had "stipulated to the existence of a fiduciary relationship satisfying the defalcation provision of § 523(a)(4)," the Sixth Circuit held nonetheless that:

> The attorney-client relationship, without more, is insufficient to establish the necessary fiduciary relationship for defalcation under § 523(a)(4). Instead, the debtor must hold funds in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4).

---

[6] Since *In re Interstate* was decided, the statute has been amended to make non-gender specific grammatical changes. The Court has cited the current statutory language.

*Id.* at 179. In its conclusion, the court emphasized: "In sum, under *Interstate Agency* the defalcation provision of § 523(a)(4) is limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Id.* at 180.

In *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386 (6th Cir. 2005), building upon *In re Interstate Agency, Inc.* and *In re Garver*, the Sixth Circuit stated:

> Although an ordinary agency-principal relationship can involve fiduciary duties, … an agent-principal relationship standing alone is insufficient to establish the type of fiduciary duty contemplated by § 523. In addition, to satisfy § 523(a)(4) in the context of a defalcation, the debtor must hold funds in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4).

*Id.* at 391. The court found a technical or express trust in that case based on the agency agreement between the parties which, critically, imposed various duties on the agent. Those duties were as follows: (i) the duty to segregate funds held on behalf of the principal (such funds constituted the trust res) from other funds, and (ii) the duty to remit such funds on a regular basis to the principal. *Id.* at 392.

In *In re Bucci*, 493 F.3d at 636, the Sixth Circuit held that the ERISA statute was not sufficient to establish a trust for purposes of section 523(a)(4). In that case, the debtor signed, in his capacity as the president and sole shareholder of a company, a collective bargaining agreement that required his company to make monthly

contributions to employee benefit funds. The contributions were not paid for over a year and the debtor subsequently filed a chapter 7 petition. The boards of trustees of the pension and fringe benefit funds sought a determination that the unpaid contributions were nondischargeable under section 523(a)(4).

Noting that the circuits are split on this issue, the Sixth Circuit held that although ERISA contemplated a fiduciary relationship, such relationship was insufficient to create a statutory trust for purposes of section 523(a)(4). *Id.* at 640-41. Regarding the intent requirement, the court stated: "[t]hough the court in *In re Blaszak* spoke of 'an intent to create a trust,' it is clear in this circuit that a statute may create a trust for purposes of § 523(a)(4) if that statute defines the trust res, imposes duties on the trustee, and those duties exist prior to any act of wrongdoing." *Id.* at 640. The court did not provide clarity on what specific duties were required as it concluded that any trust created by the ERISA statute did not arise until after the agent had failed to turn over the contributions. The court reiterated that the requisite trust relationship must preexist the act creating the debt. *Id.* at 643.

In *Tenn. Educ. Lottery Corp. v. Cooper (In re Cooper)*, 430 B.R. 480 (Bankr. E.D. Tenn. 2010), the court analyzed whether a trust was imposed in favor of the Tennessee lottery commission with respect to funds held by a retailer who sold lottery tickets and was charged with remitting sale proceeds to the lottery commission. The contracts between the parties contemplated that the retailer was

required to segregate funds in a separate account "in trust" for the commission. *Id.* at 484-85. Such contracts imposed duties upon the retailer to "preserve and to account" to the commission for all proceeds from the sale of lottery tickets and expressly stated that all funds due, after payment of commissions to the retailer from sales and cash payouts, "shall constitute a trust fund" until paid to the commission. *Id* at 486. In addition to the contractual provisions noted above, the court also looked at a Tennessee lottery statute that provided, among other things, that "[a]ll proceeds from the sale of the lottery tickets or shares shall constitute a trust fund" until paid to the commission and that the retailer had "a fiduciary duty to preserve and account for lottery proceeds." *Id.* at 490 (citing Tenn. Code Ann § 4-51-120 (2005)).

The court began its analysis by noting that there is a split of authority among courts regarding whether unpaid lottery ticket sale proceeds fall within the scope of section 523(a)(4). The court noted that most courts faced with such issue "have focused upon the wording of the individual state statutes and the duties imposed on the respective debtors…, although one focused solely upon the contracts entered into between the parties." *Id.* at 491. Based on the language of the state statute, which it read in conjunction with the parties' contracts, the court held that a trust was created for purposes of section 523(a)(4). *Id.* at 494. The court stated:

> "[T]he applicable state law creating a fiduciary relationship must clearly outline the fiduciary duties and identify the trust property" and if it does not "clearly and expressly impose trust-like obligations on a

19

party, the court should not assume that such duties exist and should not find that there was a fiduciary relationship."

*Id.* at 494-95 (internal citations omitted). The court identified the following duties that were imposed under the statute and the agreements as satisfying the "trust-like obligations" requirement: (i) the duty to maintain segregated accounts, (ii) the duty to provide an accounting, and (iii) the duty to avoid using funds for purposes unrelated to the lottery, and to pay net proceeds to the commission. *Id.* at 497.

Plaintiffs have directed the Court to a helpful case that is outside of our circuit, *Anderson v. Currin (In re Currin)*, 55 B.R. 928 (Bankr. D. Colo. 1985). In that case, the bankruptcy court held that a real estate broker's licensing statute that imposed fiduciary duties on a broker who was handling an owners' rental revenues created a trust relationship sufficient to trigger non-dischargeability under section 523(a)(4). The plaintiff argued that the Colorado licensing statute created a statutory trust because it imposed various duties on a real estate broker managing funds of a property owner. *Id.* at 932.

The court held that the Colorado statute created a trust relationship between brokers and those whose funds are held by the broker noting that the relevant duties for creating a statutory trust in that scenario are "a requirement to maintain records for each project," a requirement "to remit monies due to others," and a prohibition on commingling funds of others with the broker's own funds. *Id.* at 933.

20

The upshot of all of these cases, the Court concludes, is that in the Sixth Circuit a technical trust can be established where a statute and/or the parties' contractual agreements contemplate one party holding legal title to a specific res for the benefit of defined beneficiaries where trust-like duties (specifically, a prohibition on commingling, reporting requirements, and a lack of discretion with respect to the use of funds) are imposed prior to the occurrence of a breach.

Based on the foregoing, the Court finds that it erred when it concluded that a technical trust could not be established in this case when the Michigan Occupational Code is read in conjunction with the Property Management Agreements.[7] While the relevant statutory provisions do not use the words "trust," "trustee" or similar language, the statute does impose the following duties:

(i)     the duty to "maintain property management accounts separate from all other accounts" and to manage such accounts "in accordance with the property management employment contract,"

(ii)    the duty to "maintain records of funds deposited and withdrawn from property management accounts," and

---

[7] The case law discussed above suggests that courts within the Sixth Circuit have read relevant statutory language in conjunction with the contractual agreements between the parties for purposes of determining whether the requirements of a technical or express trust are satisfied. *See, e.g.*, *In re Interstate Agency, Inc.*, 760 F.2d 121 (6th Cir. 1985); *In re Cooper*, 430 B.R. 480, 498 (Bankr. E.D. Tenn. 2010).

(iii)    the duty to "render an accounting to [the] property management client and remit all money strictly in accordance with the property management employment contract."

Mich. Comp. Laws § 339.2512c(2), (4) and (6).

Moreover, the Property Management Agreements expressly limited the property manager's discretion with respect to proceeds and required that the net proceeds be paid to the property owner. Specifically, the agreements required that the property manager would "collect all rents as they become due" and "make distributions to Owner on a monthly basis which will be transmitted with a monthly report" detailing the rents collected and the fees, charges and expenses incurred.[8] *See* Property Management Agreements at § 1.3(2), (3). The agreements contemplate that the property manager was responsible for the maintenance and repair of the properties, but precluded it from "incurring any maintenance and/or repair expense in excess of $500 on any single property" without pre-approval by the owner after written notice. *Id.* at § 1.3(7). Finally, the agreements contemplated that the property manager could pay itself a property management fee consisting of a percentage of the monthly rent for the properties. *Id.* at § 1.5.

---

[8] The Court has assumed for purposes of this opinion that the proceeds were held in an account titled in the name of the Defendant or his business and that Defendant or his business held legal title to the property and managed it for the benefit of the owner. This, of course, is a defining feature of a trust relationship. Given the early stage of this litigation, however, such a factual determination has not yet been made.

22

Read together, the statute and the Property Management Agreements contemplate that a property manager holds legal title to funds collected related to the properties (the res) for the benefit of the owner. They contemplate that funds collected must be segregated (Mich. Comp. Laws § 339.2512c(2)), they mandate record keeping (Mich. Comp. Laws § 339.2512c(5)), they require that the property manager will provide periodic accountings to the owner (Mich. Comp. Laws § 339.2512c(6)), and they require that all funds (with limited permitted exceptions for costs, fees, expenses and commissions) will be paid to the owner on a monthly basis (Mich. Comp. Laws § 339.2512c(6); Property Management Agreements at §§ 1.3, 1.5). After further consideration, the Court agrees with the Plaintiffs that such trust-like duties can evidence an intent to create an express or technical trust for purposes of section 523(a)(4).

(ii)     **Failure to Identify a Definite Beneficiary**

The Court also concluded in the Opinion that no trust could be established in this case for purposes of section 523(a)(4) because the statute failed to identify a definite beneficiary of funds held by the property manager. The Court's reasoning was based on the fact that the Michigan Occupational Code does not, itself, identify a beneficiary but rather, provides that a property manager shall "remit all money strictly in accordance with the property management employment contract." Mich. Comp. Laws § 339.2512c(6). The statute punts to the parties' contractual agreement

23

for purposes of identifying who money shall be remitted to. This indefiniteness, the Court concluded in the Opinion, was problematic for purposes of establishing a trust.

Plaintiffs argue in the Motion for Reconsideration that the Michigan Occupational Code identifies the property management "client" as the beneficiary of a trust in Mich. Comp. Laws § 339.2512c(6). The Court disagrees. That provision provides:

> A real estate broker engaged in property management shall render an accounting to his or her property management client and remit all money strictly in accordance with the property management employment contract.

*Id.* The reference to the "client" in this statutory provision addresses to whom the accounting must be provided. The provision says nothing about to whom the money is remitted to. Rather, remittance is governed by the property management employment contract.

Nevertheless, as discussed above, the Court now concludes that, in determining whether a technical or express trust exists, it can read the statutory language *and* any contractual agreements between the parties together. While the language of the Michigan Occupational Code is not, in the Court's view, sufficiently definite in this regard, the above-referenced provisions of the Property Management Agreements do establish a sufficiently definite beneficiary—the property owner.

24

That vendors[9] or the property manager itself can first be paid from proceeds is not problematic in the Court's view as such payments are likewise constrained by the terms of the Property Management Agreements. *See* Property Management Agreements, §§ 1.3, 1.5.

## IV.  CONCLUSION

For the reasons stated, the Court concludes that it was an error to dismiss Count II of the Complaint at this early stage of the litigation. Plaintiffs have sufficiently alleged that the Michigan Occupational Code, when read in conjunction with the Property Management Agreements, establishes a technical trust sufficient for their section 523(a)(4) claim to survive a motion to dismiss under Civil Rule 12(b)(6). The Court will enter a separate order consistent with this opinion.

**Signed on October 20, 2025**



**/s/ Paul R. Hage**

**Paul R. Hage**
**United States Bankruptcy Judge**

---

[9] The Court agrees with the Plaintiffs' argument in the Motion for Reconsideration that "definiteness" under section 523(a)(4) requires an identifiable class (e.g. vendors), not a roster of names. Such an approach is consistent with the approach adopted by courts analyzing the Michigan Builders Trust Fund Act and the Michigan Insurance Code in this context.